IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL P. THEELE, D.V.M., Ph.D.,

      Plaintiff,

vs.                                                                    Civ. No.  07-294 JP/RHS

THE BOARD OF REGENTS FOR
THE UNIVERSITY OF NEW MEXICO,
ANDREA ALLAN, individually and
DANIEL SAVAGE, individually,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On April 28, 2008, Defendants Board of Regents for the University of New Mexico

(Board of Regents) and Dr. Daniel Savage filed Defendant Board of Regents for the University

of New Mexico and Daniel Savage's Motion for Summary Judgment (Doc. No. 44).  Having

reviewed the evidence, the briefs and relevant law, the Court determines that the motion for

summary judgment should be granted.

A.  Background

This is a First Amendment free speech retaliation action brought under 42 U.S.C. §1983.

Plaintiff (a former University of New Mexico (UNM) Campus Veterinarian and Director of the

Animal Resource Facility) is suing the Board of Regents, Dr. Andrea Allan (an associate

professor in the UNM Department of Neuroscience), and Dr. Savage (a professor and Chair of

the UNM Department of Neuroscience).[1]  Plaintiff resigned from UNM allegedly as a result of

retaliation he suffered at the hands of Defendants for exercising his right to free speech.  Plaintiff

---

[1]Dr. Allan was Plaintiff's peer while Dr. Savage was, at least nominally, one of Plaintiff's
supervisors.

seeks only monetary damages.

As part of his duties at UNM, Plaintiff reviewed and signed forms approving high school science fair projects involving animal research.  In April 2004, Sarah Founds, a high school science fair participant mentored by Dr. Allan, performed a science experiment wherein mice were forced to swim for 15 minutes and mice were suspended by their tails for six minutes.  For purposes of this motion for summary judgment, the Defendants accept that someone forged Plaintiff's signature on the form approving Ms. Founds' science fair project.[2]  Plaintiff would not have approved the science fair project because the treatment of the mice amounted to animal abuse in violation of state and federal law.  In addition, Dr. Allan apparently deceived Plaintiff with respect to Ms. Founds' science fair project by submitting false and misleading documentation that the animal research project had been approved by the UNM Institutional Animal Care and Use Committee (IACUC).  IACUC is the UNM committee which approves animal research and deals with complaints regarding unapproved procedures on animals.[3]

When Plaintiff discovered that his signature had been forged, that Dr. Allan had misled him with respect to Ms. Founds' science fair project, and that mice had been abused in Ms. Founds' science fair project, Plaintiff notified the chair of the IACUC to investigate the matter.[4] Plaintiff also notified UNM counsel about these events because of his concerns that UNM would have to face "a potential PR nightmare."  Ex. A, Depo. of Dr. Theele at 104 (attached to

---

[2]Plaintiff commented in his deposition testimony that he does not know who forged his signature but he believes that Dr. Allan should be held responsible for the forgery since only Dr. Allan had access to the form which had the forged signature.

[3]In fact, Plaintiff had written a couple of documents for UNM describing how to handle animal abuse violations.

[4]  Both Dr. Allan and Plaintiff were members of the IACUC at that time.

2

Plaintiff's Response in Opposition to Defendants, UNM and Daniel Savage's Motion for Summary Judgment (Doc. No. 57)(Plaintiff's Response in Opposition).

The IACUC investigated Plaintiff's complaint regarding Ms. Founds' science fair project and produced a final report which "concluded that the animal research was in violation of federal and UNM policies."  Complaint for Damages for Civil Rights Violations Pursuant to 42 U.S.C. §1983 (Doc. No. 1) at ¶18.  Although Plaintiff did not believe that the IACUC treated him unfairly in its investigation of Plaintiff's complaints about Ms. Founds' science fair project, Plaintiff did not agree with some of the findings in the IACUC report relating to his actions. Nonetheless, Plaintiff subsequently contacted the Faculty Ethics Committee and the Academic Freedom & Tenure Committee because he felt that he was not given an opportunity to present his side of the controversy.  Both the Faculty Ethics Committee and the Academic Freedom & Tenure Committee either did not respond or did not respond adequately to Plaintiff's complaints.

Dr. Allan was also not satisfied with the process the IACUC used in investigating the animal abuse charge Plaintiff brought against her so, at Dr. Savage's suggestion, Dr. Allan filed a complaint with the Academic Freedom & Tenure Committee.  Dr. Allan believed that the process took too long, that the sanctions were too harsh, and that Plaintiff had made untrue and inflammatory statements against her.  The Academic Freedom & Tenure Committee found in Dr. Allan's favor.

Plaintiff further indicates that UNM misled a federal oversight agency regarding Ms. Founds' 2004 science fair project.  First, Plaintiff maintains that although the IACUC recommended suspending Dr. Allan's protocols for six months those protocols were never actually suspended.  Second, Plaintiff asserts that he was not responsible for some of the

problems because he was duped into signing a document containing false information.

In September 2004, Dr. Savage wrote a letter to Dr. Paul Roth, Dean of the UNM School of Medicine, noting that Plaintiff and Dr. Allan had a hostile relationship which had deteriorated into personal attacks.  Although Plaintiff characterized his relationship with Dr. Allan prior to April 2004 as cordial, he admits to having had arguments with Dr. Allan and to there being at least one heated incident involving Dr. Allan's treatment of Plaintiff's staff.

Sometime after Plaintiff first complained to the IACUC about Ms. Founds' science fair project,  Dr. Savage purportedly convened a group of department chairs to ask them to poll their staff about Plaintiff's behavior.  Moreover, Dr. Savage apparently accused Plaintiff at an IACUC meeting of interfering with Dr. Allan's ability to begin research by requesting rewrites of Dr. Allan's protocol for the research.  At another time, Dr. Savage warned Plaintiff not to discipline Dr. Allan's technician for violating policy regarding the removal of transgenic mice from the animal facility.

In another incident occurring after the Plaintiff submitted his complaint to the IACUC regarding Ms. Founds' science fair experiment, Dr. Savage purportedly implied that Plaintiff was an incompetent veterinarian for allowing a large number of rats to die. Plaintiff subsequently received a written reprimand from Dr. Roth concerning Plaintiff's responsibility for the deaths of the rats.  Dr. Roth merely repeated the findings by the IACUC and Dr. Eaton, the Institutional Officer and Dean of the Health Sciences Department.[5]

On June 30, 2005, Plaintiff wrote a letter of resignation addressed to Louis Caldera (president of UNM) and Richard Larson (Associate Dean for Research, UNM School of

_____

[5]Dr. Eaton later suggested that Plaintiff should leave UNM .

4

Medicine).  Plaintiff believed that it was best to resign because he had lost his effectiveness as a

veterinarian. Plaintiff also complained that the administration supported Dr. Allan a "faculty

member who has violated federal policies regulating the use of animals in research, who has

blatantly abused animals, and who furthermore has influenced students in an unethical manner."[6]

Ex. 10 (attached to Defendants Board of Regents for the University of New Mexico and Daniel

Savage's Memorandum Brief in Support of Their Motion for Summary Judgment (Doc. No.

45)(Memorandum Brief in Support of Summary Judgment).  Plaintiff further stated that Dr.

Allan "retains responsibility for slanderous actions directed at me, forgery of my signature on

documents that have received national attention; and dispersal of untruthful accusations and false

representation of facts related to this case." *Id*.  Plaintiff then asserted that Dr. Savage engaged

in retaliatory actions against him for reporting the abuse of animals.[7]  Plaintiff noted that Dr.

Roth had implied that Plaintiff had acted inappropriately and that two different reports slandered

his reputation.[8]  In addition, Plaintiff alleged that he had not received any response to the

complaint he filed with the Faculty Ethics and Advisory Committee and that he had "been

ordered muted during the entire investigation of this matter."[9]  *Id*.

---

[6]Plaintiff does not mention Dr. Allan by name in his resignation letter but it is clear that he is referring to Dr. Allan.

[7]Plaintiff also does not mention Dr. Savage by name in the resignation letter but instead refers to his chairperson.

[8]One of these reports was by Dr. Jack Iver, the UNM vice provost, which was "very scathing and degrading" to Plaintiff.  Ex. 1, Depo. of Dr. Theele at 254 (attached to Memorandum Brief in Support of Motion for Summary Judgment).   The Academic Freedom & Tenure Committee also issued a report stating that "someone at the supervisory level needed to address [Plaintiff's] behavior...."  Ex. A, Depo. of Dr. Theele at 259 (attached to Plaintiff's Response in Opposition).

[9]Dr. Iver apparently ordered Plaintiff to be silent.

On October 27, 2005, Plaintiff wrote an e-mail message to Dr. Roth explaining why he was discontent with UNM's handling of the incidents related to Ms. Founds' science fair project. Plaintiff noted first that it took 18 months to investigate the forged approval of Ms. Founds' science fair project and to come to the conclusion that the signature was indeed forged. Plaintiff also claimed that Dr. Allan "wrote false statements in documents, lied to investigative committees, accused [him] of being drunk, and disseminated other false character assasinations [sic] to distract investigative committees from her actions."[10]  Ex. 2 (attached to Memorandum Brief in Support of Summary Judgment). In addition, Plaintiff contended that Dr. Savage tried to undermine his credibility.[11]

As an administrator of the program of veterinary care at UNM, Plaintiff was required to adhere to the American Veterinary Medical Association's (AVMA) code of ethics and policies which gave Plaintiff the ethical and professional responsibility to notify the appropriate authorities of illegal practices regarding animal research. Moreover, "[a]ll employees are responsible for reporting any possible dishonest or fraudulent activity." Ex. 8, UNM Internal Audit document (attached to Memorandum Brief in Support of Motion for Summary Judgment).

During his employment at UNM, Plaintiff received good evaluations. Dr. Savage was nominally involved in Plaintiff's annual evaluations as Plaintiff's academic supervisor. Dr. Savage had no actual supervisory authority over Plaintiff and did not provide feedback on

---

[10]Plaintiff does not name Dr. Allan in this e-mail but it is apparent that he is referring to Dr. Allan.

[11]Plaintiff refers to a UNM chair undermining his credibility. Obviously, Plaintiff was referring to Dr. Savage.

Plaintiff's job performance.[12]   No one at UNM ever made Plaintiff move to a smaller office; Plaintiff's pay was never cut; Plaintiff was never denied salary increases; UNM continued to renew his yearly employment contract; Plaintiff was never transferred to another position or reassigned to another position; and UNM officials never changed Plaintiff's official duties or responsibilities.

The Board of Regents contends that this lawsuit should be dismissed against it with prejudice because it is entitled to Eleventh Amendment immunity.  Dr. Savage, likewise, contends that this lawsuit should be dismissed with prejudice as to him because he is entitled to qualified immunity.

B.  Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212

---

[12]Plaintiff's actual supervisors were the UNM School of Medicine research dean and the UNM vice president because Plaintiff's activities were purely administrative, not research related.

(10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).   This is a heavy burden for the plaintiff.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)(citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)).  "'First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.'"  *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1534-35).  If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"  *Nelson*, 207 F.3d at 1206 (quoting *Albright*, 51 F.3d at 1535)).  In other words, although the court "review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise the defendants are entitled to qualified immunity." *Cram*, 252 F.3d at 1128 (citation omitted).

C.  Discussion

    1.  The Board of Regents:  Eleventh Amendment Immunity

    The Board of Regents argues that as a state entity it is not a "person" under §1983 and that the Eleventh Amendment, therefore, precludes any claim against the Board of Regents for monetary damages.  The Plaintiff opposes this argument by citing to *Daddow v. Carlsbad Mun. School Dist.*, 120 N.M. 97, 898 P.2d 1235 (1995), *cert. denied*, 516 U.S. 1067 (1996).  In *Daddow*, the New Mexico Supreme Court held that a local school board is not an "arm of the state" and that it is indeed a "person" for §1983 purposes. Consequently, the New Mexico Supreme Court held that the state waived any Eleventh Amendment immunity with respect to local school boards.  *Daddow*, however, is easily distinguished from this case because the New Mexico Supreme Court analyzed the issue of Eleventh Amendment immunity in the context of local school boards, entities very different from a board of regents of a state university.  In fact, several years later, the Tenth Circuit squarely addressed the issue of Eleventh Amendment immunity with respect to the UNM Board of Regents.  The Tenth Circuit held that the UNM Board of Regents is an "arm of the state" entitled to Eleventh Amendment immunity.  *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 494 n.3 (10th Cir. 1998).  Hence, the Board of Regents is not a "person" under §1983 and Plaintiff's claim against the Board of Regents is subject to dismissal with prejudice.  *See id.*

    2.  Dr. Savage:  Qualified Immunity

    The first issue in this qualified immunity analysis is to determine if the Plaintiff has carried his heavy burden of showing that Dr. Savage violated Plaintiff's First Amendment right to free speech by retaliating against Plaintiff for his speech.  In deciding whether an employee

has a valid freedom of speech retaliation claim, the Court employs a five step analysis known as

the *Garcetti/Pickering* test.  The Tenth Circuit has summarized that test as follows:

> First, the court must determine whether the employee speaks "pursuant to [his] official
> duties." If the employee speaks pursuant to this official duties, then there is no
> constitutional protection because the restriction on speech "simply reflects the exercise of
> employer control over what the employer itself has commissioned or created."  Second, if
> an employee does not speak pursuant to his official duties, but instead speaks as a citizen,
> the court must determine whether the subject of the speech is a matter of public concern.
> If the speech is not a matter of public concern, then the speech is unprotected and inquiry
> ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court
> must determine "whether the employee's interest in commenting on the issue outweighs
> the interest of the state as employer."  Fourth, assuming the employee's interest
> outweighs that of the employer, the employee must show that his speech was a
> "substantial factor or a motivating factor in [a] detrimental employment decision."
> Finally, if the employee establishes that his speech was such a factor, "the employer may
> demonstrate that it would have taken the same action against the employee even in the
> absence of the protected speech."  The first three steps are to be resolved by the district
> court, while the last two are ordinarily for the trier of fact.

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202-03 (10th Cir.

2007)(citations omitted).

> a.  Step One of the *Garcetti/Pickering* Test: Speech Made as Part of Official
> Duties

Dr. Savage argues first that Plaintiff has not satisfied the initial step of the *Garcetti-*

*Pickering* test because Plaintiff failed to demonstrate that his speech, i.e., his complaints

regarding Dr. Allan and Ms. Founds' science fair project, was not made pursuant to his official

duties as the Campus Veterinarian and Director of the Animal Resource Facility.  "[S]peech is

made pursuant to official duties if it is generally consistent with 'the type of activities [the

employee] was paid to do.'" *Id*. at 1203 (quoting *Green v. Bd. of County Commr's*, 472 F.3d

794, 801 (10th Cir. 2007)).  "The ultimate question is whether the employee speaks as a citizen or

instead as a government employee-an individual acting 'in his or her professional capacity.'

10

Consequently, if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Id*. (citations omitted).  In determining the question of whether an employee's speech was made in the course of performing an official duty, the Court "take[s] a practical view of all of the facts and circumstances surrounding the speech and the employment relationship." *Id*. at 1204 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 1961 (2006)).

        Plaintiff contends that although he had a moral and ethical duty to report allegations of animal abuse to the IACUC, he did not have a professional or contractual duty to report animal abuse allegations to the IACUC.  Plaintiff also notes that Dr. Savage has not produced a job description detailing a duty to report animal abuse.  Plaintiff, however, admitted in his deposition testimony that "in terms of assigned duties, it had been one of my assigned duties to assist the University with maintaining compliance with federal, state, and local regulations governing the use of animals in research."  Ex. 1, Depo. of Dr. Theele at 254 (attached to Memorandum Brief in Support of Motion for Summary Judgment).  Plaintiff also admitted in his deposition testimony that his profession as a veterinarian required that he adhere to the AVMA's code of ethics.  *Id*. at 63.  Plaintiff did not dispute that the AVMA policies state that veterinarians have a professional responsibility to report illegal activities to the proper authorities.  *Id*. at 113-14.  Plaintiff further admitted in deposition testimony that as administrator of the program of veterinary care, he had "the moral, ethical, and <u>dutiful</u> responsibility to look out for animals used in research at UNM...."  *Id*. at 116 (emphasis added).  *See also* Ex. 2, Oct. 17, 2005 letter from Plaintiff to Dr. Roth at 2 (attached to Memorandum Brief in Support of Motion for Summary

Judgment).  In addition, as the Campus Veterinarian, Plaintiff admitted that he had "the moral, ethical, and <u>dutiful</u> responsibility to inform others if [he] believe[d] that illegal animal research was being conducted at UNM...."  Ex. 1, Depo. of Dr. Theele at 117 (attached to Memorandum Brief in Support of Motion for Summary Judgment)(emphasis added).  *See also* Ex. 3, Notes written by Plaintiff dated January 27, 2005 (attached to Memorandum Brief in Support of Motion for Summary Judgment)("Upon receiving notification of allegations of improper use of animals in [Dr. Allan's] lab, I did as required of the attending veterinarian–I reported the allegation to the IACUC office.").  Dr. John Paul Gluck, senior bioethicist at the UNM Institute for Ethics and Director of the UNM Research Ethics Service Project, verified that Plaintiff as Campus Veterinarian and a UNM employee had a duty to report improper and unapproved animal experiments to the IACUC.  Ex. 5, Depo. of Dr. John Paul Gluck at 5-6, 56-57 (attached to Memorandum Brief in Support of Motion for Summary Judgment).  The undisputed record evidence indicates that Plaintiff's official duties as Campus Veterinarian and Director of the Animal Resource Facility included reporting animal abuse to the proper authorities like the IACUC.  The fact that Defendants did not produce a job description showing that reporting animal abuse was an official duty of Plaintiff's position "is not dispositive, however, because speech may be made pursuant to an employee's official duties even if it deals with activities that the employee is not expressly required to perform."  *Brammer-Hoelter*, 492 F.3d at 1203.  Because Plaintiff's official duties included the reporting of animal abuse to the IACUC, the First Amendment does not protect that particular speech.

        Plaintiff argues, in the alternative, that if he had a duty to report animal abuse, he nonetheless has a free speech retaliation claim arising from his insistence that Dr. Allan be

appropriately disciplined for her actions and from his insistence that UNM's reporting to the

federal governmental oversight agency be complete and accurate.  Plaintiff correctly observes

that he did not have a duty to discipline Dr. Allan for her actions because Dr. Allan was his peer.

Although Plaintiff did not have any specific official duty to discipline Dr. Allan, he did have a

duty to "look out" for research animals.  In advocating the best treatment for the research

animals, it would not be outside of Plaintiff's role as Campus Veterinarian and Director of the

Animal Resource Facility to insist that Dr. Allan be appropriately disciplined in order to prevent

future animal abuse by Dr. Allan. Consequently, Plaintiff's speech regarding disciplining  Dr.

Allan was made as part of Plaintiff's official duties and is, thereby, not protected by the First

Amendment.

Moreover, Plaintiff argues that he did not have a duty to report the circumstances

surrounding Ms. Founds' science fair experiment to governmental oversight agencies because

that duty belonged to UNM.  Contrary to Plaintiff's argument, Plaintiff testified in his deposition

that he perceived that one of his roles "was to provide information to the oversight committees

that would keep the Institution out of trouble."  Ex. 1, Depo. of Dr. Theele at 190-91 (attached to

Defendants' UNM and Daniel Savage's Reply in Support of Their Motion for Summary

Judgment (Doc. No. 61)).  As noted above, Plaintiff also had a general duty to report animal

abuse to the proper authorities which would necessarily include governmental oversight

agencies.  Hence, Plaintiff's argument that his official duties did not include ensuring that reports

to governmental oversight agencies were accurate is without merit.  The First Amendment,

therefore, did not protect Plaintiff's speech which related to ensuring that reports to

governmental oversight agencies are correct and accurate.

Plaintiff further asserts that his speech regarding his forged signature was not part of his official duties because UNM policy did not require him to report the forged signature as fraud. However, the undisputed language of the UNM Internal Audit policy clearly states that "[a]ll employees are responsible for reporting any possible dishonest or fraudulent activity."  Ex. 8 (attached to Memorandum Brief in Support of Motion for Summary Judgment).  Plaintiff's reporting of the forged signature to the IACUC was, therefore, speech made pursuant to an official duty and not subject to the protection of the First Amendment.

In sum, Plaintiff has failed to carry his heavy burden of showing that he has met the first step of the *Garcetti/Pickering* test.  The Court concludes as a matter of law that the First Amendment did not protect Plaintiff's speech.  Since Plaintiff has not demonstrated that Dr. Savage violated his constitutional rights, Dr. Savage is entitled to qualified immunity.

b.  Step Two of the *Garcetti/Pickering Test*: Matters of Public Concern

Although the Court need not proceed in discussing any of the remaining steps of the *Garcetti/Pickering* test because of its conclusion regarding the first step of that test, the Court will nonetheless address the remaining issues raised by the parties in the interest of justice. Plaintiff maintains that his efforts to have UNM impose meaningful discipline against Dr. Allan was an important public issue in that he was speaking out against animal abuse at UNM.  "In determining whether speech pertains to a matter of public concern, the court may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest."  *Brammer-Hoelter*, 492 F.3d at 1205 (quoting *Lighton v. University of Utah*, 209 F.3d 1213, 1224 (10ᵗʰ Cir. 2000)). To analyze step two, the Court is "required to consider 'the content, form, and context of

14

a given statement, as revealed by the whole record.'" *Id.* (quoting *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983)).  Work place frustration, dissatisfaction with a supervisor's performance, and grievances concerning internal affairs do not amount to matters of public concern.  *Id.* at 1205-06

In this case, the IACUC found that Dr. Allan had violated federal and UNM policies. Complaint at ¶18.  The IACUC recommended that Dr. Allan be disciplined but Plaintiff contends that the discipline actually imposed on Dr. Allan was not meaningful.  In essence, Plaintiff's speech regarding Dr. Allan's discipline involved his disagreement with UNM on how UNM carried out the IACUC's recommendation to discipline Dr. Allan.  This type of speech reflects Plaintiff's frustration with UNM and how it handles disciplinary issues which are typically an internal affair.  *See* Ex. 1, Depo. of Dr. Theele at 233 (attached to Memorandum Brief in Support of Motion for Summary Judgment)("what this is all about is my frustration at their failure to address the issue.").  Plaintiff's insistence that Dr. Allan be appropriately disciplined, therefore, does not constitute a matter of public concern as a matter of law.  Plaintiff has not met the second step of the *Garcetti/Pickering* test and Dr. Savage is entitled to qualified immunity on this basis as well.

c.  Step Three of the *Garcetti/Pickering Test*: Detrimental Employment Decision (Adverse Employment Action)

Dr. Savage argues that Plaintiff cannot meet the third step of the *Garcetti/Pickering* test because Plaintiff did not experience any adverse employment action.  Plaintiff contends that the adverse employment action in this case was a constructive discharge.[13]  An employer may violate

---

[13]Although Plaintiff lists in his response brief actions by Dr. Savage as well as by other individuals leading to the constructive discharge, the Court will focus on Dr. Savage who is a

an employee's First Amendment rights by engaging in an action "short of discharge."  *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1205 (10th Cir. 1998).  A constructive discharge occurs when "'working conditions [are] so difficult that a reasonable person in the employee's position would feel compelled to resign.  Essentially, a plaintiff must show that [he] had no other choice but to quit.  The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.'"  *Anderson v. Clovis Mun. Schools*, 265 Fed. Appx. 699, 707 (10th Cir. 2008)(quoting *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004)).  A constructive discharge claim requires not only showing that the employee was subject to tangible or adverse employment action but also requires a showing that the work environment was intolerable.  *Id.* (quoting *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805 (10th Cir. 2007)).  "'Only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action.'"  *Anderson*, 265 Fed. Appx. at 704 (quoting *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006), *cert. denied*, 127 S.Ct. 1372 (2007)).

In examining the record in the light most favorable to Plaintiff (even allowing for evidence that might be considered hearsay), the Court accepts that Dr. Savage engaged in the following actions as outlined by Plaintiff in his response brief at 15:

> 1) Dr. Savage began to discredit Plaintiff's abilities as a veterinarian.  2) Dr. Savage alleged that Plaintiff was incompetent in that a large number of deaths in a rat colony used for experiments had occurred.  Dr. Savage held Plaintiff responsible for the deaths and complained to Plaintiff's peers and superiors about Plaintiff.  3) Dr. Savage wrote a letter to Plaintiff's superior Dr. Roth and accused Plaintiff of having a hostile relationship

_____

defendant in this lawsuit and is seeking qualified immunity.

with Dr. Allan.  Dr. Savage attributed Plaintiff's reporting and continued requests for Dr. Allan to be disciplined to Plaintiff being vindictive and wanting to cause trouble for Dr. Allan.  4) Dr. Savage also went to Plaintiff's peers and requested his peers to report any problems or complaints they had against Plaintiff.  5) Dr. Savage encouraged Dr. Allan to file a complaint against Plaintiff with the Academic Freedom and Tenure Committee.  6) Dr. Savage directed Dr. Allan to report Plaintiff was under the influence of alcohol while at work.  7) Dr. Savage accused Plaintiff of lying and interfering with Dr. Allan's research in a meeting with Plaintiff's peers. ...  13) Dr. Allan with the assistance of Dr. Savage filed a complaint against Plaintiff with the Academic Freedom and Tenure Committee.

Although Plaintiff clearly disagreed with Dr. Savage's actions, those actions did not result in any significant changes in his employment status so as to affect his compensation or the terms, conditions, or privileges of his employment.  *See Anderson*, 265 Fed. Appx. at 704.  In other words, Dr. Savage's actions did not constitute tangible or adverse employment actions.  Even if it is assumed that Dr. Savage's actions amounted to tangible or adverse employment actions, Plaintiff must produce evidence that a reasonable person in his position would have had no other choice but to resign in order to show a constructive discharge.  In this case, two of Plaintiff's former supervisors at UNM told Plaintiff to "forget the incident and put it behind [him]."  Ex. A, Depo. of Dr. Theele at 259 (attached to Plaintiff's Response in Opposition).  Furthermore, Plaintiff recalls that Dr. Roth told him, "'Dan, you're making too big a deal about all of this.  Just forget about it.'"  *Id*.  This undisputed record evidence demonstrates that Plaintiff had a choice to stay in his position if he had wanted to.  Consequently, a reasonable person in Plaintiff's position would not have felt compelled to resign.  Moreover, a reasonable person would not have found the conditions of Plaintiff's employment so intolerable that resigning was the only option open to that person.  Having failed to show that Plaintiff suffered an adverse employment action, Plaintiff has not met the third step of the *Garcetti/Pickering* test.  Accordingly, Dr. Savage is entitled to qualified immunity based on Plaintiff's failure to

17

demonstrate that he suffered an adverse or detrimental employment action.

C.  Conclusion

Eleventh Amendment immunity precludes suit against the Board of Regents.  Dr. Savage is entitled to qualified immunity because Plaintiff has failed to carry his heavy burden of showing that Dr. Savage violated his First Amendment right to free speech.  Plaintiff's claims against the Board of Regents and Dr. Savage should, therefore, be dismissed with prejudice.

IT IS ORDERED that Defendant Board of Regents for the University of New Mexico and Daniel Savage's Motion for Summary Judgment (Doc. No. 44) is granted and summary judgment will be entered in favor of the Board of Regents and Dr. Savage on Plaintiff's claims against the Board of Regents and Dr. Savage, which will be dismissed with prejudice.

_____

SENIOR UNITED STATES DISTRICT JUDGE

18